UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REVAN SHAWKAT MANSOOR,<br><br>                           Petitioner,<br><br>v.<br><br>FRED FIGUEROA, Warden, Otay Mesa Detention Center; GREGORY ARCHAMBEAULT, Field Director, U.S. Immigration & Customs Enforcement; ELAINE DUKE, Acting Secretary, U.S. Department of Homeland Security; DOES 1-3,<br><br>                          Respondents. | Case No.: 3:17-cv-01695-GPC (NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS** |

      Petitioner Revan Shawkat Mansoor ("Petitioner"), proceeding with counsel, is a national and citizen of the Republic of Iraq. (*See* ECF No. 1-2 at 2.[1]) He is currently in the custody of the United States Immigration and Customs Enforcement ("ICE"), an agency of the United States Department of Homeland Security ("DHS"). (*Id.* at 4.) On

---

[1] Page numbers are based on CM/ECF pagination.

1

August 23, 2017, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition"). (ECF No. 1.) He moves for immediate release from custody or, in the alternative, release with enrollment in the Intensive Supervision Appearance Program ("ISAP"). (*Id.* at 9.) Respondents include: Fred Figueroa, Warden at Otay Mesa Detention Center; Gregory Archambeault, Field Director at ICE; and Elaine Duke, Acting Secretary at DHS (collectively "Respondents"). (*Id.* at 1.) Respondents were ordered to file a response by January 12, 2018, but they failed to do so. (*See* ECF No. 3.) On January 16, 2018, Petitioner filed a motion requesting the Court grant his Petition for Writ of Habeas Corpus. (ECF No. 4.) The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1.d.1. After a thorough review of the issues and the documents presented, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's Petition for Writ of Habeas Corpus.

I. **Background**

Petitioner is a citizen and national of the Republic of Iraq. (*See* ECF No. 1-2 at 2.) On April 21, 2009, he was admitted into the United States as a Child of a Refugee. (*Id.* at 4.) On November 14, 2013, after receiving a Notice to Appear from ICE as a removable alien convicted of a crime of domestic violence and being released on the Alternatives to Detention program, the Immigration Judge ("IJ") ordered the removal proceedings terminated without prejudice. (*Id.*)

After Petitioner was convicted of sodomy of a person under sixteen years of age in violation of California Penal Code sections 286(b)(2), and lewd act upon a child fourteen or fifteen years of age in violation of California Penal Code section 288(c)(1), ICE made contact with Petitioner in January 2016. (*Id.*) On July 11, 2016, Petitioner was released from the San Diego Central Jail and transferred to the custody of ICE. (*Id.*) ICE placed Petitioner into removal proceedings and issued him a Notice to Appear. (*Id.*) Petitioner appeared before an IJ in San Diego, California, where he sought relief under the

Immigration and Nationality Act. (*Id.* at 2.)

On April 18, 2017, Petitioner was denied Asylum and Withholding of Removal. (*Id.*) Petitioner was granted deferral of removal to Iraq under Article III of the Convention Against Torture. (*Id.*) Instead, he was ordered removed to Turkey. (*Id.*) Petitioner's April 18, 2017 order of removal is final.

On July 28, 2017, ICE reviewed Petitioner's custody status and determined it would not release Petitioner because he was deemed to be a threat to the community. (*Id.* at 4.) The decision also stated that the Government of Turkey will not issue a travel document to Petitioner. (*Id.*) Petitioner remains in the custody of ICE and is being held at the Otay Mesa Detention Center located in San Diego, California. (*Id.*) On August 23, 2017, Petitioner filed his Petition for Writ of Habeas Corpus with this Court seeking his immediate release or, in the alternative, enrollment in the Intensive Supervision Appearance Program ("ISAP"). (ECF No. 1.) The government failed to file a timely response, and, on January 16, 2018, Petitioner filed a motion requesting that the Court grant his Petition. (ECF No. 4.)

## II. Jurisdiction

Pursuant to 28 U.S.C. § 2241, alien detainees can properly challenge the extent of the Attorney General's authority to detain a removable alien under the statutes authorizing detention. *Zadvydas v. Davis*, 533 U.S. 678, 687-89 (2001); *see also Demore v. Kim*, 538 U.S. 510, 516-17 (2003). Although the REAL ID Act of 2005 divested district court jurisdiction over habeas petitions challenging orders of removal, it does not divest the district court of jurisdiction over challenges to detention. *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (citation omitted); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006). However, the scope of the federal courts' review is limited to constitutional claims and questions of law. *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Here, Petitioner challenges his continued detention and not the

validity of a final order of removal. Therefore, this Court has jurisdiction under 28 U.S.C. § 2241 to consider his Petition.

### III. Merits

Petitioner asserts that Respondents have subjected him to prolonged detention. (ECF No. 1 at 3.)

### a. Prolonged Detention

Petitioner claims he is being held in detention pursuant to 8 U.S.C. § 1231(a)(6). (ECF No. 1 at 4.) Section 1231(a) requires detention throughout a ninety-day removal period for a noncitizen having received a final order of removal based on criminal grounds. 8 U.S.C. §§ 1231(a), 1231(a)(2). If the noncitizen has not been removed during this period, § 1231(a)(6) authorizes continued detention at the discretion of the Attorney General. 8 U.S.C. § 1231(a)(6). However, once detention becomes prolonged and the detainee is not provided with adequate bond hearings, serious due process concerns arise. *See Diouf v. Napalitano*, 634 F.3d 1081, 1091 (9th Cir. 2011) (finding DHS regulations governing the 180-day independent review "*do* raise serious constitutional concerns" because they do not provide for a decision by a neutral arbiter and, "[a]t this point, the alien's continuing detention becomes prolonged.");[2] *see also Demore*, 538 U.S. at 531-32 (reasoning that mandatory detention of a removable noncitizen for a brief period of time does not violate due process, but deprivations of liberty by continued unreasonable detention could entitle the detainee to greater protections) (J. Kennedy concurring). The Ninth Circuit has imposed a bright-line standard, defining "prolonged detention" as that which exceeds six-months. *Diouf*, 634 F.3d at 1092 n.13 ("As a general matter, detention

---

[2] *Diouf* builds upon a series of Ninth Circuit jurisprudence recognizing that prolonged detention without a bond hearing raises serious due process concerns. *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011); *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008); *Nadarajah*, 443 F.3d at 1078-79; *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005).

4

is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months.").

Petitioner has been in the custody of Respondents since July 11, 2016. His final order of removal was entered on April 18, 2017. Following its entry, Petitioner remained in Respondents' custody throughout the ninety-day removal period required by 8 U.S.C. § 1231(a)(2). Although the ninety-day removal period ended on July 16, 2017, Petitioner has yet to be removed from the United States or released from detention. On July 28, 2017, Respondents independently reviewed Petitioner's custody status and determined Petitioner would not be released because Respondents considered him to be a threat to the community. (*See* ECF No. 1-2 at 4.) Petitioner has been in the continuous custody of Respondents for more than eighteen months from the date his custody began on July 11, 2016. Over six months have passed since Petitioner's ninety-day removal period ended on July 16, 2017. Petitioner has not received a bond hearing before a neutral arbiter. Instead, Petitioner has only been provided with an independent review of his detention by Respondents. (*Id.*) Thus, the Court finds that Respondents have held Petitioner in prolonged detention without adequate procedural safeguards.

### b. Assignment to an Immigration Judge

Petitioner now seeks his release or, in the alternative, placement in ISAP. However, the Court finds Petitioner's request more appropriately suited for determination by an IJ.

IJs must hold bond hearings every six months for all noncitizens detained under general immigration detention statutes. *Diouf,* 634 F.3d at 1082 (holding individuals held under 8 U.S.C. § 1231 are entitled to a bond hearing after six months of detention, where the government bears the burden of justifying their continued imprisonment); *Rodriguez v. Robbins*, 804 F.3d 1060, 1090 (9th Cir. 2015) ("*Rodriguez III*") (extending the six month bond hearing requirement to individuals held under 8 U.S.C. §§ 1225(b), 1226(a),

and 1226(c)). The Ninth Circuit has set forth a myriad of procedural safeguards available to noncitizens subject to prolonged detention.[3] Paramount to the discussion at bar is the government's duty to **automatically** schedule a bond hearing before an IJ for detainees every six months. *See Rodriguez III,* 804 F.3d at 1085, 1089 (emphasis added).[4] In addition, the government bears the burden of justifying its detainee's prolonged imprisonment by establishing through clear and convincing evidence that he is a flight risk or a danger to the community. *Singh*, 638 F.3d at 1205; *Tijani*, 430 F.3d at 1242. During the bond hearing, an IJ must consider alternatives to detention. *Rodriguez III*, 804 F.3d at 1074. Alternatives include reasonable conditions of supervision, such as electronic monitoring through ISAP. *Id.* at 1087-88.

IJs are a specialized and experienced group within the Department of Justice already entrusted to make determinations about the government's legitimate interest in the further deprivation of a noncitizen's liberty. *Id.* at 1089. "The power to order a bail hearing before an [IJ] is the type of practice and workable remedy within the district court's broad equitable powers." *Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1114 (S.D. Cal. 2008) (citing *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("[i]n the constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary,

---

[3] In addition to the procedural safeguards at bar in Petitioner's case, the Ninth Circuit requires the following procedures for prolonged detention bond hearings: (1) the IJ must take into account the cumulative duration of detainment, where the government has a stronger burden the longer detention persists, *Rodriguez III*, 804 F.3d at 1088-89; (2) the IJ should consider whether there may be some impediments to the noncitizen's removal, *id.* at 1089 n.18 (citing *Owino v. Napolitano*, 575 F.3d 952, 955-56 (9th Cir. 2009)); (3) the government must make a contemporaneous record of the hearing, such that a transcript can be made available for an appeal of the bond determination, *see Singh*, 638 F.3d at 1207.

[4] Although the procedural guidelines set forth in *Rodriquez III* were established for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), *Diouf* expressly requires the same guidelines for detainees held under 8 U.S.C. § 1231(a)(6). *Diouf*, 634 F.3d at 1091 (asserting that individuals detained under § 1231(a)(6) are entitled to the same procedural safeguards against prolonged detention as individuals detained under § 1226(a)).

what is fair, and what is workable.")). "The Ninth Circuit has further held, both explicitly and implicitly, that courts have the authority to remedy prolonged detention . . . by ordering the government to provide an individualized bond hearing before an IJ." *Straube v. Chertoff*, No. 07cv1751 JM (NLS), 2008 WL 3925680, at *3-5 (S.D. Cal. 2008) (citing *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008); *Casas-Castrillon*, 535 F.3d 942; *Tijani*, 430 F.3d 1241). *Tijani* was the first to authorize the district court to order an expeditious bond hearing before an IJ where a noncitizen had been subjected to prolonged detention. *Tijani*, 430 F.3d at 1242 (remanding a habeas corpus case to the district court with instructions to order a bond hearing before an IJ within sixty days and, if the bond hearing is not provided, grant petitioner's writ); *see also Straube*, 2008 WL 3925680, at *3 (identifying *Tijani* as the first Ninth Circuit decision to authorize such a remedy). *Tijani's* progeny demonstrates a consistent exercise of the district court's equitable power to order an individualized bond hearing before an IJ. *Casas-Castrillon*, 535 F.3d at 951; *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1130 (9th Cir. 2013) ("*Rodriguez II*") (affirming district court's preliminary injunction requiring the government to "provide each [detainee] with a bond hearing" before an IJ and to "release each Subclass member on reasonable conditions of supervision . . . unless the government showed by clear and convincing evidence that continued detention was justified"); *Rodriguez III*, 804 F.3d at 1066-73; *Judulang v. Chertoff*, 535 F. Supp. 2d 1129, 1135 (S.D. Cal. 2008) (ordering the government to provide petitioner a bond hearing before an IJ within thirty days); *Mustanich v. Gonzales*, No. 07cv1100 WQH (LSP), 2007 WL 2819732, at *8, 11 (S.D. Cal. 2007) (finding petitioner's four-year detention unreasonable and ordering the government to provide a bond hearing before an IJ within ten days). A bond hearing before an IJ aptly provides the government with the opportunity to establish that its detainee is a flight risk or a danger to the community. *Tijani* 430 F.3d at 1242; *Mustanich*, 2007 WL 2819732, at *10 ("consistent with *Tijani*,

the government should be given the opportunity to establish that Petitioner is a flight risk or a danger to the community in a bail hearing before an IJ."); *see also Mau*, 549 F. Supp. 2d at 1253.

For more than eighteen months, Petitioner has remained under the trusted custody, care, and supervision of Respondents. Over six months of Petitioner's detention has occurred after Petitioner's mandatory removal period ended. On July 28, 2017, Respondents independently denied Petitioner's release on bond, determining that Petitioner remained a danger to the community. (*See* ECF No. 1-2 at 4.) While there is no indication that Petitioner submitted an application with the Immigration Court for review of Respondents' bond determination, it is not Petitioner's duty to do so. It is Respondents' responsibility to, at a minimum, safeguard Petitioner's liberty interests by automatically providing him with a bond hearing before an IJ after each six month period of detainment. *See Rodriguez III*, 804 F.3d at 1085, 1089. It is also Respondents' burden to prove to the IJ that Petitioner's continued imprisonment is justified. *See Singh*, 638 F.3d at 1205; *Tijani*, 430 F.3d at 1242. Yet, Respondents have failed to provide Petitioner with a bond hearing before an IJ. The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program such as ISAP. *See Rodriguez III*, 804 F.3d at 1087-89. Meanwhile, this Court lacks the factual support to make a determination about Petitioner's risk of flight or dangerousness to the community. As such, it is appropriate and consistent with Ninth Circuit jurisprudence to provide Respondents with an opportunity to establish such facts before an IJ. *See Prieto-Romero*, 534 F.3d 1053; *Casas-Castrillon*, 535 F.3d 942; *Tijani*, 430 F.3d 1241. Furthermore, it is within the purview of this Court's equitable powers to order Respondents to provide Petitioner with an expeditious bond hearing before an IJ. *See Mau*, 562 F. Supp. 2d at 1114. Accordingly, this Court orders Respondents to provide Petitioner a hearing within

twenty days of this order before an IJ with the power to grant him bond and/or ISAP placement.

**IV. Conclusion**

The Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's Petition for Writ of Habeas Corpus.

**IT IS HEREBY ORDERED** that:

(1) Petitioner's request for immediate release or, in the alternative, ISAP placement is **DENIED**.

(2) Respondents are **ORDERED** to provide petitioner a hearing within twenty days of this order before an immigration judge with the power to grant him bond and/or ISAP placement.

**IT IS SO ORDERED.**

Dated: February 13, 2018

Hon. Gonzalo P. Curiel
United States District Judge